UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re                                                                                    Chapter 7

PERSIO A. NUNEZ,                                                       Case No. 14-41746-CEC

                Debtor.
-----------------------------------------------------------x

## DECISION

APPEARANCES:

    Persio A. Nunez, Pro Se
    99-11 37th Avenue
    Corona, NY 11368

    Bradley C. Rosen, Esq., Pro Se
    189 Brookview Drive
    Rochester, New York 14617

    Margarita Ferriera, Pro Se
    99-11 37th Avenue
    Corona, NY 11368

CARLA E. CRAIG
Chief United States Bankruptcy Judge

The issues before this Court concern (i) whether counsel was required to disclose legal fees paid or agreed to be paid pursuant to 11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure 2016(b) (the "Bankruptcy Rule[s]"); and (ii) if so, whether fee disgorgement, either partial or total, is appropriate.[1]

This voluntary Chapter 7 case was commenced on April 10, 2014.  On February 21, 2018, Persio A. Nunez ("Debtor") and Margarita M. Ferriera ("Ferriera") filed a joint letter (the "February 21 Letter"), entitled "Letter Requesting a Hearing," stating, inter alia, that they retained Bradley C. Rosen, Esq. ("Rosen") in 2015 to represent them in this bankruptcy case and related matters.  (Feb. 21 Ltr., ECF No. 60.)  Annexed to the February 21 Letter is a document entitled "STATUS REPORT FOR MARGARITA FERRIERA & PERSIO ŇUNEZ," sent by Rosen to the Debtor and Ferriera, dated September 25, 2015 (the "Status Report") in which Rosen seeks payment of $50,000 pursuant to a purported fee agreement, dated August 4, 2015 (the "Fee Agreement") (Feb. 21 Ltr. at 3, ECF No. 60.)

Rosen is not the attorney of record for the Debtor or Ferriera in this bankruptcy, nor in the associated adversary proceeding, and, prior to August 28, 2018, Rosen never disclosed his representation of the Debtor or the existence of the post-petition retainer agreements and payments.

On March 9, 2018, the Court entered an Order directing that Rosen show cause why the Court should not impose sanctions on Rosen for his failure to adequately represent the Debtor and why the Court should not order the return of fees paid in connection with this case and determine the Fee Agreement excessive pursuant to Bankruptcy Rule 2017 (the "First Rosen OSC").  (First Rosen OSC, ECF No. 63.)  Also on March 9, 2018, the Debtor filed a letter

---

[1] Unless otherwise specified, statutory references are to Title 11, U.S.C.  Citations to "ECF No." are to documents filed in Case No. 14-41746-cec, identified by docket entry number, unless otherwise indicated.

indicating that he had paid a total of $70,000 in legal fees to Rosen. (Mar. 9 Ltr., ECF No. 61.) On August 28, 2018, a hearing on the First Rosen OSC was held at which Rosen, the Debtor, and Ferriera, appeared.

On November 5, 2018, the Court entered an Order adjourning the hearing on the First Rosen OSC and (i) directing Rosen and the Debtor to submit copies of all retainer agreements entered into between the parties; (ii) directing the Debtor to submit proof of any payments, including payments made through an intermediary, made to Rosen with respect to this bankruptcy case; and (iii) directing Rosen to submit all time records that relate to his representation of the Debtor with respect to, or relating to, this bankruptcy case (the "Second Rosen OSC"). (Second Rosen OSC, ECF No. 84.) A hearing on the Second Rosen OSC was held on January 22, 2019, at which Rosen, the Debtor, and Ferriera, appeared.[2]

JURISDICTION

This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This matter is a core proceeding under 28 U.S.C § 157(b)(2)(A).

BACKGROUND

A. **Facts**

On April 10, 2014, Persio A. Nunez ("Nunez"), pro se, filed a voluntary petition under Chapter 7 of the Bankruptcy Code. (Pet., ECF No. 1.) Although, on July 8, 2014, Alejandro Gil, Esq. ("Gil") filed a letter indicating that the Debtor had retained him in this bankruptcy case

---

[2] References to the transcript of the August 28, 2018 hearing (ECF No. 82) are identified as "8/28 Tr." References to the transcript of the January 22, 2019 hearing (ECF No. 87) are identified as "1/22 Tr."

(Ltr., ECF No. 14), by letter dated January 8, 2016, Gil stated that the Debtor had "changed his mind the very same day [July 8, 2014] and he never tendered any retainer fees nor did he sign any retainer agreement." (Ltr., ECF No. 37.) According to the Debtor's petition, the primary assets of the Debtor's estate were two parcels of real property, a vacant lot located at 99-09 37th Avenue, Corona NY (the "99-09 Property"), and the Debtor's residence located at 99-11 37th Avenue, Corona NY (the "99-11 Property"). (Pet., ECF No. 1; Final Report, ECF No. 70.)

On January 22, 2016, an Order was entered granting the motion of Emigrant Funding Corporation ("Emigrant") for relief from the automatic stay with respect to the 99-11 Property. (Lift Stay Order, ECF No. 38.)

On January 25, 2016, the Chapter 7 trustee (the "Trustee") commenced an adversary proceeding against Ferriera seeking to avoid, as a fraudulent conveyance, the January 6, 2010 transfer (the "99-09 Transfer") by the Debtor of the 99-09 Property to Ferriera (the "Adversary Proceeding") (Compl., 16-01034-cec, ECF No. 1.) The Debtor and Ferriera "are not married but they've been together for over 35 years." (8/28 Tr. 28:10–12.) At the time the Trustee commenced the adversary proceeding, a foreclosure action by Nationstar Mortgage LLC ("Nationstar"), holder of note and mortgage on the 99-09 Property, was pending in state court. (See So-Ordered Stip., ECF No. 43.) In addition to Nationstar's mortgage, there was a judgment lien in favor of Angel Villavicencio ("Villavicencio") against the 99-09 Property in the amount of $492,568.27, as well as various Environmental Control Board violations. (Id.) On May 9, 2016, a default judgment was entered in favor of the Trustee and against Ferriera, setting aside the 99-09 Transfer. (Default J., 16-01034-cec, ECF No. 7.)

After reaching an agreement with Nationstar and Villavicencio, the Trustee sold the 99-09 Property on May 25, 2017. (Final Report at 2, ECF No. 70.) The Debtor received a discharge in this bankruptcy case on July 7, 2017. (Discharge Order, ECF No. 56.)

1. <u>The February 21, 2018 Letter</u>

Although Rosen had communicated with the Office of the United States Trustee with regard to this bankruptcy, his involvement in this case was first revealed to the Court by the Debtor's February 21, 2018 Letter. (<u>See</u> Rosen Opp. at Ex. 7, ECF No. 78-7 (Ltr. to UST); Feb. 21 Ltr., ECF No. 60.) The February 21 Letter was filed almost two years after the default judgment was entered in the Adversary Proceeding, and approximately nine months after the 99-09 Property was sold. In the February 21 Letter, the Debtor claims that he and Ferriera were not served in the Adversary Proceeding, asserts that the 99-09 Transfer should not have been set aside as fraudulent, and states, in pertinent part,

> Please note that in connection with this matter, I am supposed to have been represented by attorney Bradley C. Rosen of 189 Brookview Drive Rochester, New York with whom I signed a retainer and paid legal fees. See attached signed letter from Mr. Rosen dated September 22, 2015 in which he states that he "appeared" on behalf of both Margarita Ferriera and myself. Please note that Mr. Rosen's letter refers "a portion of the Court docket" which he reprinted and claims shows he acted on my behalf on September 8, 2015. However, according to the enclosed printed court docket, there is no such entry and made no such appearance on my behalf. Unfortunately, to-date I have had no news concerning this matter from either the trustee or Mr. Rosen.
> …
> It is clear to me that the court was led to act without regard to my interests or those of Ms. Ferriera over whom the court had no jurisdiction. She and I therefore request a hearing before the court to determine whether the trustee and Mr. Rosen acted without notice or regard to my interests and to know what has happe[ned] to my case.

(Feb. 21 Ltr., ECF No. 60.) Additionally, in the Status Report attached to the February 21 Letter, that Rosen sent to the Debtor and Ferriera on September 25, 2015, Rosen states,

4

> I wanted you to know that after my first contact with the Office of The United States Trustee, everything, including the foreclose actions, has been halted….
>
> …
>
> The Trustee wanted to have your case thrown out of the Bankruptcy Court, basically handing you naked to the wolves. Since I've appeared, he stopped this attempt, keeping your case alive and in the Court. The result is that all of your assets are still protected. More importantly, this means that the foreclosures are now stopped, just as I told you they would be.
>
> It's clear that I've spent a great deal of attorney time on your case. What you don't know is that I'm now dealing with the Department of Justice and other separate Federal agencies. This is very intricate and tricky work that, by its very nature, places me at personal risk. But this was something I knew might be part of the job when we signed the agreement on August 4, 2015.
>
> In return, you promised in that same Agreement to pay me $50,000 (which was supposed to have been paid before I started). Despite all the work I have done, success I have had, and risk I have now taken, you have paid me only $3,000 of the promised $50,000. This is not acceptable. I need you to make good on your promise (which I acted upon in good faith) and wire at least a substantial portion of the remaining $47,000 to me by Friday the 25th. I have supplied my banking coordinates below for your convenience.
>
> …

(Feb. 21 Ltr. at 3, ECF No. 60.) The Debtor filed another letter on March 9, 2018, reciting the same requests made in the February 21 Letter and further stating, "I also have had no communication from Mr. Rosen to whom Ms. Ferreira [sic] paid $70,000.00 on my behalf to represent us both in this matter. Mr. Alejandro Gil is not now and never has been my lawyer." (Mar. 9 Ltr., ECF No. 61.)

Although served with the First Rosen OSC on March 14, 2018, (Cert. of Notice, ECF No. 64), Rosen filed his opposition on August 28, 2018, the date of the hearing. (Rosen Opp., ECF No. 78.) As a result, the hearing was adjourned and the parties were directed to submit to the Court copies of all retainer agreements entered into between the parties; the Debtor was directed to submit proof of any payments made to Rosen; and Rosen was directed to submit his time records. (Second Rosen OSC, ECF No. 84.)

2. <u>The Retainer Agreements</u>

The Debtor and Ferriera entered into two legal services agreements with Rosen, both of which were after the Debtor filed this bankruptcy case on April 10, 2014. The first agreement is dated May 15, 2015 (the "May Retainer") (Rosen Opp. at Ex. 16, ECF No. 78-16), and the second agreement is dated August 4, 2015 (the "August Retainer") (collectively the "Retainer Agreements"). (<u>Id.</u> at Ex. 3, ECF No. 78-3.)

i. *The May Retainer*

The May Retainer is between Rosen and the Debtor and Ferriera. (Rosen Opp. at Ex. 16, ECF No. 78-16.) The May Retainer provides that the Debtor and Ferriera will pay "a single, lump-sum fee of $20,000." (<u>Id.</u>) Rosen stated that he believes that the $20,000 was "paid entirely by Ferriera." (Rosen Opp. ¶ 53, ECF No. 78.) The Debtor states that this fee was paid by Ferriera "on his behalf." (Mar. 9 Ltr., ECF No. 61.) The May Retainer further provides that if the Debtor and Ferriera authorize Rosen to attempt to "recover any seized property and/or compensation for any identifiable damages," and if Rosen is successful, then Rosen will collect an additional fee "on a [one-third] contingency basis … (meaning that Clients would <u>not</u> pay <u>any</u> retainer or other fees, and Attorney only gets paid from anything recovered…)." (Rosen Opp. at Ex. 16, ECF No. 78-16.)

Pursuant to the May Retainer, "Attorney shall provide Clients with legal services that pertain to the various issues and actions involving the property located at 99-11… ." (Rosen Opp. at Ex. 16, ECF No. 78-16.) The May Retainer provides examples of the work that Rosen will perform with regard to the 99-11 Property, including (a) defending the Debtor and Ferriera against Emigrant's attempts to foreclosure or otherwise enforce their mortgage; (b) investigating the mortgage and security agreement with Emigrant; and (c) investigating "any other judgements

[sic] that may have also been entered against Clients." (Id.; see also 8/28 Tr. 14:8–9 (stating that the May Retainer was "[i]n regards to the property at 9911 … because of the foreclosure proceeding…").)

Rosen contends that, on May 15, 2015, the date of the May Retainer, he was unaware that the Debtor was in bankruptcy, and, neither the Debtor nor Ferriera informed him of the bankruptcy. (Rosen Opp. ¶ 51, ECF No. 78.)

    ii.    *The August Retainer*

Rosen, the Debtor, and Ferriera, entered into the August Retainer. (Rosen Opp. at Ex. 3, ECF No. 78-3.) Pursuant to the August Retainer, Rosen was to perform the following legal services:

- a. Regarding *In Re Persio A. Nunez*, Case No. 14-41746 (CEC) (the "Bankruptcy"). Attorney shall investigate, research and examine, in full depth and detail, the entirety of the Bankruptcy and any and all matters related, directly and/or indirectly, to it. The scope of Attorney's investigation shall include, but not be limited to, the propriety, legality and/or validity of: the manner in which the Bankruptcy Petition was created; the contents of the Bankruptcy Petition; all other filings made in the Bankruptcy; the conduct and actions of all parties who appeared in the Bankruptcy; the legitimacy of the basis of the claims of the Creditors; any other actions or proceeds related to any Creditor's claim (such as other lawsuits and/or liens and judgements [sic] obtained therein); and any transactions (such as loans) that are in any manner connected to any Creditor's claim. If Attorney discovers anything that he reasonably believes renders the Bankruptcy, or any Creditor claim filed therein, invalid, Attorney shall take any and all reasonable and permissible action to have same dismissed, voided or otherwise nullified.

- b. CLIENTS UNDERSTAND AND ACKNOWLEDGE THAT ATTORNEY SHALL NOT APPEAR OR REPRESENT EITHER R BOTH OF THEM IN THE PENDING BANCRUPTCY [sic] ACTION, OR IN ANY OTHER BANKRUPTCY ACTION.

(Id.)

The August Retainer provides that the Debtor and Ferriera will pay "a single, lump-sum fee of $50,000." (Id.) As with the May Retainer, the August Retainer provides for additional fees on a contingency basis, stating that, "[i]f Clients want Attorney to pursue any recovery on their behalf, then Clients shall give Attorney written authorization to do so," and if successful, Rosen is entitled to one-third of the value of the recovery. (Id.) Rosen stated that he believes the $50,000 "was paid entirely by a mutual colleague, Mr. Manny Heredia…." (Rosen Opp. ¶ 56, ECF No. 78; 8/28 Tr. 17:7–8 ("I dispute that Mr. Nunez paid it. I do not dispute having received $70,000"), 18:3–5 ("And I did not at any time receive any payment directly from Mr. Nunez nor did I believe that any of the money that I was receiving was from Mr. Nunez.").) The Debtor contends that Heredia was acting as an intermediary and Ferriera was the source of the funds. (8/28 Tr. 8:3–8.)

All parties agree that Rosen was paid a total of $70,000. It is undisputed that Rosen did not file any statement disclosing the May Retainer or the August Retainer or disclosing his receipt of legal fees in this case either prior to, or subsequent to, entering into the Retainer Agreements and receiving payments.

**B. Rosen's Contentions**

Rosen contends that because he was unaware of the bankruptcy when he entered into the May Retainer, he could not have made the required disclosures pursuant to § 329(a) and Bankruptcy Rule 2016(b). (1/22 Tr. 10:1–10.) He further contends that the May Retainer relates to a state court foreclosure proceeding with respect to the 99-11 Property, a matter that is not connected to this bankruptcy case. (8/28 Tr. 13:5–6.)

With regard to the August Retainer, Rosen contends that he did not represent the Debtor or Ferriera in this bankruptcy case, as evidenced by, *inter alia*, the statement contained in paragraph 2(b) of the August Retainer, and, as such, Rosen asserts that "it is a tautology that I did not fail to give them adequate representation." (Rosen Opp. ¶ 42, ECF No. 78.) Rosen states that the August Retainer was entered into when he learned of the bankruptcy and, notwithstanding the services delineated in the August Retainer, Rosen contends that he was not charging the Debtor for any work done in relation to this bankruptcy, and was only charging for worked performed in the state court. (8/28 Tr. 17:23–18:1; 1/22 Tr. 11:23–12:4.)

Alternatively, Rosen contends that, although both retainers provide for billing at a flat fee rate, rather than hourly, "over the three year period in which I provided legal services to the [Debtor and Ferriera], I provided them with more than $70,000 worth of legal services." (Rosen Opp. ¶ 60, ECF No. 78.)

Rosen states that he was unaware of the disclosure requirements set forth in the Bankruptcy Rule 2016. (See 1/22 Tr. 29:20–23 ("[I] didn't realize the full scope of the rules. I just knew in general that I couldn't appear in bankruptcy court which is exactly why I put in the retainer agreement that I was not representing them in bankruptcy.").) Rosen, however, argues that because (i) he did not represent the Debtor in this bankruptcy, at stated in the August Retainer; (ii) at the time both retainers were entered into, the Debtor had bankruptcy counsel; and (iii) he did not charge the Debtor for the work he performed in relation to the bankruptcy, he should not be sanctioned for his failure to disclose pursuant to § 329(a) and Bankruptcy Rule 2016(b).

DISCUSSION

**A. Section 329(a) and Bankruptcy Rule 2016(b) Disclosure Requirements**

Section 329(a) provides that,

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329(a). "Bankruptcy Rule 2016(b) implements § 329(a) by requiring a debtor's attorney to file the statement required by that section within 14 days after days after the order for relief." In re Chatkhan, 496 B.R. 687, 693 (Bankr. E.D.N.Y. 2012). Bankruptcy Rule 2016(b) further obligates the attorney to file a supplemental statement "within 14 days after any payment or agreement not previously disclosed." Fed. R. Bank. P. 2016(b). Both § 329(a) and Bankruptcy Rule 2016(b) require the source of compensation to be disclosed, "even if the source is not the debtor but a third party." 3 Collier on Bankruptcy ¶ 329.03 (16th ed. 2019). This disclosure obligation is mandatory and not permissive, regardless of whether counsel will seek compensation from the estate, and is central to the integrity of the bankruptcy process. Charmoy v. McNielly (In re McNeilly), No. 15-30064 (AMN), 2017 WL 3737536, at *6 (Bankr. D. Conn. Aug. 28, 2017) (citation omitted). Noncompliance with § 329(a) is not excused where counsel was unaware of the disclosure requirements. See Kohout v. U.S. Trustee, 513 B.R. 675, 681 (N.D. W. Va. 2014) (refusing to excuse noncompliance, reasoning that an attorney's "ignorance does not excuse his noncompliance").

**B. Payments and Retainers with respect to Non-Debtor Ferriera**

The plain language of § 329(a) and Federal Rule of Bankruptcy Procedure 2016(b) make clear that the disclosure requirements only arise in relation to representation of the debtor. See 11 U.S.C. § 329(a) (entitled "*Debtor's* transaction with attorneys" and states "[a]ny attorney *representing a debtor*…") (emphasis added); Fed. R. Bank. P. 2016(b) ("Every attorney *for a debtor*…") (emphasis added). Although disclosure of the source of the funds is mandated, even where the source is a non-debtor third party, irrespective of the source of the funds, the representation must be of the debtor, and not a third party, to invoke the disclosure requirements. See In re Greco, 246 B.R. 226, 233 (Bankr. E.D. Pa. 2000) ("We are concerned only with disclosure of services performed on behalf of the Debtor, and the charges for same."). As the May and August Retainers provide for Rosen's representation of the Debtor and non-debtor Ferriera, the payments that relate to Rosen's representation of Ferriera do not require disclosure in this bankruptcy, and are therefore not subject to disgorgement under § 329(a) and Bankruptcy Rule 2016(b). (See Rosen Opp. at Ex. 3, 16.)

**C. Attorney Gil's Representation of the Debtor**

Rosen's contends that Gil's prior appearance in this bankruptcy case on behalf of the Debtor relieves him from these disclosure obligations. Rosen argues that he could not, and was not, appearing on behalf of the Debtor in this case because, at the time of the Retainer Agreements, Gil was the attorney of record for the Debtor. (Rosen Opp. ¶ 16; 1/22 Tr. 23:8–11.) This argument is misguided and contrary to the mandate encompassed in Bankruptcy Rule 2016(b) that "[e]very attorney for a debtor ... shall file ... the statement required by § 329 …" Fed. R. Bank. P. 2016(b); see also In re Gorski, 519 B.R. 67, 73 (Bankr. S.D.N.Y. 2014)

("[R]etention is not the issue here. … [Counsel] cannot pin the blame on the Debtor or his counsel. Federal Rule of Bankruptcy Procedure 2016 makes clear that "[e]very attorney for a debtor ... shall file ..." the disclosure."). Whether Gil provided inadequate representation to the Debtor, as Rosen asserts, and whether or not Gil was the attorney of record, is irrelevant to Rosen's independent duty to disclose his post-petition fee agreements with the Debtor and the payments he received. See In re B.E.S. Concrete Prods., Inc., 93 B.R. 228, 237 (Bankr. E.D. Cal. 1988) ("The burden is on the person to be employed to come forward and make full, candid, and complete disclosure.").

**D. Failure to Disclose the May and August Retainers**

1. Unaware of the Bankruptcy

Rosen's argument that because he was unaware of the pending bankruptcy at the time of the May Retainer, he cannot be sanctioned for failing to comply with the disclosure requirements contained in the Bankruptcy Code and the Bankruptcy Rules is unavailing.

As noted in In re Hall, "[t]he approach within the Second Circuit has uniformly been to decide Bankruptcy Code and Rule disclosure violations with an inflexible standard. No exceptions are to be made based upon inadvertency (slipshodness) or good faith." 518 B.R. 202, 207 (Bankr. N.D.N.Y. 2014) (internal quotations and citations omitted); accord Neben & Starrett Inc. v. Chartwell Financial Corp. (In re Park-Helena Corp.), 63 F.3d 877, 881 (9th Cir. 1995) ("The disclosure rules are applied literally, even if the results are sometimes harsh. Negligent or inadvertent omissions 'do not vitiate the failure to disclose.'" (citations omitted)).

Moreover, Rosen learned of the bankruptcy at some time prior to entering into the August Retainer on August 5, 2015. (Rosen Opp. at Ex. 3.) Even assuming that Rosen was not in

violation of § 329(a) and Bankruptcy Rule 2016(b) for the five months that he asserts he was unaware of the bankruptcy, for more than three years after learning of the Debtor's bankruptcy, he failed to file the required disclosures. See Gorski, 519 B.R. at 73 ("Even if [counsel] did not learn of the bankruptcy until sometime in December 2013, no disclosure was ever made in this case. His arguments to the contrary miss the point…. [Counsel] has an independent duty to disclose the fees. He failed to do so for months after learning of the case."). Based on the foregoing, Rosen's claim that being unaware of the bankruptcy at the time of the May Retainer should excuse his failure to comply with § 329(a) and Bankruptcy Rule 2016(b) must be rejected.

2. In "connection with" this Bankruptcy Case

"The phrase 'in connection with the case' used in § 329(a) extends to services that will impact the bankruptcy case." Chatkhan, 496 B.R. at 693 (citations omitted); accord Gorski, 519 B.R. at 71 (noting that "courts treat that phrase [in connection with] as having an extensive reach"). "[I]f it can be objectively determined that the services rendered or to be rendered by the attorney have or will have an impact on the bankruptcy case," then such services are in connection with the bankruptcy case and fall within the ambit of § 329(a)'s disclosure requirements. Gorski, 519 B.R. at 72.

The August Retainer is unambiguously in connection with this bankruptcy case. The May Retainer is likewise in connection with this bankruptcy case. The May Retainer, entered into after commencement of this bankruptcy case, involves the estate's primary asset, the Debtor's residence, and Rosen purports to undertake to "prohibit the commencement and/or continuation of any attempts by Emigrant Funding Group ("Emigrant") to foreclose … or in any other way enforce the Mortgage…". (Rosen Opp. at Ex. 16.)

13

In Cohn v. U.S. Trustee (In re Ostas), as a result of nondisclosure, the court ordered counsel to disgorge fees received for representing the debtor in a foreclosure action. 158 B.R. 312, 321–22 (N.D.N.Y. 1993). In finding that the foreclosure and the debtor's bankruptcy were "inextricably intertwined," the district court stated, "it is difficult to see how the foreclosure work done by [counsel] could be considered anything but work done 'in connection' with the debtors' bankruptcy proceedings." Id.

With respect to the 99-11 Property, the automatic stay as to Emigrant was not lifted until January 22, 2016, approximately eight months after the May Retainer. (Lift Stay Order, ECF No. 38.) Rosen's representation under the May Retainer was in connection with this bankruptcy in that it involved the Debtor's primary asset, it involved attempting to challenge the validity and enforcement of the mortgagee's claim, and it was entered into post-petition. Here, as in Ostas, it is difficult to see how the May Retainer was not made in connection with this bankruptcy, and therefore subject to the disclosure requirements of § 329(a).

3. Providing more than $70,000 in Legal Services

Rosen argues that regardless of the services delineated in the August Retainer, he did not charge the Debtor for the work performed in connection with this bankruptcy, and the value of the services he performed in the state court exceed the amounts received. (See Rosen Opp. ¶ 94 ("But if Your Honor considered what I did on behalf of the Complainants in the state court actions only, I believe that it will be clear that the fee of $70,000 for almost 3 years' worth of work was not excessive.").)

For several reasons this argument is flawed. Whether or not Rosen's fees are reasonable, "the fact that the fee may or may not have been reasonable or have been earned does not justify a disregard for the rules of disclosure." In re Stewart, 583 B.R. 775, 782 (Bankr. W.D. Okla.

14

2018) (citations omitted). Moreover, the August Retainer does not provide for Rosen to charge the Debtor with respect to the foreclosure action in state court and only provides for work in connection to the bankruptcy case. If, as Rosen argues, he was not charging the Debtor for any work performed with respect to this bankruptcy, it is unclear what, if any, work was performed under the August Retainer. Further, the May Retainer was a flat fee, and only provided for additional fees to be incurred after pre-approval by the Debtor, based on a one-third fee on any recovery. Rosen concedes this did not occur. In any event, Rosen was required to disclose the May Retainer and the payments he received for his work performed in the state court.

4. Source of Funds

In Rosen's opposition, and at the hearings on August 28, 2018 and January 22, 2019, Rosen emphasized that the Debtor was not the source of the payments made under the Retainers. However, § 329(a) requires a debtor's attorney to disclose the source of payments received, regardless of who that source is. See Chatkhan, 496 B.R. at 694 (noting that regardless of the funding source, counsel was "nonetheless obligated to comply with § 329, [and] Bankruptcy Rule 2016(b)…"); accord In re Frye, 570 B.R. 27, 30–31 (Bankr. D. Vt. 2017) ("Under the plain language of § 329(a), and pertinent case law, [Counsel] was obliged to disclose all payments, regardless of the source."). It is Rosen's representation of the Debtor, and not the source of the funds, that triggers Rosen's disclosure obligations under § 329(a) and Bankruptcy Rule 2016(b).

5. The August Retainer's Disclaimer

Neither the warning contained in August Retainer that Rosen was not representing the Debtor or Ferriera in this bankruptcy case, nor Rosen's statement to the United States Trustee that he was not representing the Debtor in this bankruptcy case (see Rosen Opp. at Ex. 7), have any bearing on Rosen's duty to disclose. Nevertheless, the statement in the August Retainer is

difficult to reconcile with the services delineated in the retainer, which exclusively relate to the bankruptcy proceeding.  Moreover, whether Rosen was representing the Debtor in this case, or by performing other legal work related to this bankruptcy case, he had an obligation to disclose the fee agreement, and by failing to do so he risked being required to disgorge the fees received.  See In re Gilliam, 582 B.R. 459, 467 (Bankr. N.D. Ill. 2018).

E. **Nondisclosure Warrants Disgorgement**

As one bankruptcy court stated,

> The disclosure requirements of Rule 2016 play an important role in the court's oversight of professional compensation. Congress provided through §§ 329 and 330 of the Bankruptcy Code that bankruptcy courts review and approve attorney compensation in consumer bankruptcy cases like this one.

McNeilly, 2017 WL 3737536 at *8.  Had Rosen disclosed his fee agreements with the Debtor, the Court would have had the opportunity to review the post-petition payments pursuant to Bankruptcy Rule 2017(b).  Because he failed to disclose, the Court was foreclosed the opportunity to provide the protection to the debtor, the estate, and creditors, that § 329 and Bankruptcy Rule 2016 envision.  See Henderson v. Kisseberth (In re Kisseberth), 273 F.3d 714, 721 (6th Cir. 2001) ("To ensure [protection of both creditors and debtors against overreaching attorneys], bankruptcy courts have broad and inherent authority to deny any and all compensation where an attorney fails to satisfy the requirements of the Code and Rules.").

Failure to file the disclosures mandated by § 329(a) and Bankruptcy Rule 2016(b) is grounds to deny all fees and costs sought by counsel.  See Chatkhan, 496 B.R. at 695–96 ("A bankruptcy court may deny an attorney all compensation based upon the failure to satisfy § 329(a) and Rule 2016(b), and need not find that the fees requested are excessive."); see also Ostas, 158 B.R. at 321 ("Anything less than the full measure of disclosure leaves counsel at risk

that all compensation may be denied."); accord Hall, 518 B.R. at 207 ("Failure to properly disclose a fee agreement subjects counsel to sanctions—even in the absence of other inappropriate conduct." (citation omitted)).

While "it has long been the practice in [the Second Circuit] to deny compensation to counsel who fail to comply with the disclosure provisions...."), In re Chez, 441 B.R. 724, 731 (Bankr. D. Conn. 2010) (alterations in original), other courts have held that "[f]ull disgorgement of fees is not automatic, and the bankruptcy court has the 'latitude to tailor a sanction that is appropriate under the unique circumstance' of the case." Frye, 570 B.R. at 31.  Ultimately, to determine the appropriate sanction, "the court exercises its discretion and examines the particular facts of the case."  Id.; see also In re Brown, 371 B.R. 486, 499 (Bankr. N.D. Okla. 2007) ("Disgorgement of fees as a result of inadequate disclosure by counsel is a matter left to the sound discretion of the bankruptcy court.").

When Rosen and the Debtor entered into the May Retainer, the automatic stay remained in effect with regard to the 99-11 Property.  However, given that much of the work Rosen performed under the May Retainer in the state court occurred after the stay was lifted on January 22, 2016, although Rosen should have disclosed the May Retainer, the work performed after that date in the foreclosure action bears a less direct relationship to this bankruptcy case. Additionally, Rosen performed a significant amount of work over a three year period in the state court, in which he charged a flat fee of $20,000.  For the foregoing reasons, and in the Court's discretion, the Court will not order disgorgement of fees paid pursuant to the May Retainer.

Rosen shall disgorge one half, $25,000, of the fees received pursuant to the August Retainer.  This is appropriate because, under the August Retainer, Rosen undertook the representation of Ferriera, a non-debtor, as well as the Debtor.  The services provided to the

Debtor pursuant to August Retainer were in connection with this bankruptcy case, and Rosen failed to disclose the payments he received, and the fee agreement, pursuant to § 329(a) and Bankruptcy Rule 2016(b). Rosen's failure to comply with his disclosure obligations prevented the Court from reviewing a retainer, paid post-petition, for work directly connected to this bankruptcy case.

Following the principles of allocation set forth in § 329, the fees shall be returned to Ferriera. See Kisseberth, 273 F.3d at 722 ("Although we recognize that § 329 deals with the disgorgement of fees only to the extent that they are excessive, we see no reason why the principles of allocation set forth in § 329 should not apply to all of the funds disgorged [as a result of attorney's failure to disclose]."). The payments to Rosen were made post-petition, were not property of the Debtor's bankruptcy estate, and the Debtor and Ferriera credibly asserted that Ferriera was the source of the funds. (See Mar. 9 Ltr., ECF No. 61; 8/28 Tr. 8:3–8.) Therefore, the funds shall be returned to "the entity that made such payment." 11 U.S.C. § 329(b)(2).

## CONCLUSION

For the reasons stated above, and pursuant to § 329(a) and Bankruptcy Rule 2016(b), Rosen shall disgorge $25,000. A separate order will be issued.

**Dated: Brooklyn, New York**
**March 29, 2019**

Carla E. Craig
**Carla E. Craig**
**United States Bankruptcy Judge**